Kipp v. Den ex Dem. Van Blarcom and others.

---

WALLING KIPP AND NICHOLAS KIPP v. DEN EX DEM.
VAN BLARCOM AND OTHERS.

1. In an ejectment, where one of the questions in dispute is whether
the *locus in quo* is included within the *east* boundary of the farm of the
lessors of the plaintiff's lessors, there being no documentary proof of the
east boundary, and the evidence as to possession being doubtful and con-
flicting, it is error to charge, that if the disputed premises are within the
*north* boundary line, the plaintiff is entitled to recover.

2. Proof of a right to unload a vessel at a wharf, is no proof of title to
the wharf; and proof of the claim and exercise of the right, is no proof
of possession of the wharf, or that the tenant holds the wharf under the
claimant. The easement of unloading a vessel is consistent with title in
another.

---

This cause was removed from the Supreme Court by writ
of error. The errors assigned were founded upon a bill of
exceptions, to the charge of Justice HAINES, before whom
the cause was tried, at the Passaic circuit.

The lessors of the plaintiff, showed title to a farm at Ac-
quackanonck, called the Van Wagoner farm, by devise and
descent, for near two hundred years, tracing the same to
an old patent, under the proprietary government. This
title was traced principally by devise and descent, and
there were no written muniments of title in evidence, which
gave the boundaries of the farm. The lessors of the plain-
tiff claimed the premises, in dispute, to be part of the Van
Wagoner farm. The Van Wagoner farm was situate on
the west side of the Passaic river, and along the margin of
the river, in front of the farm, there was a public road,
which had been there as far back as memory or tradition
could trace it, and over one hundred and fifty years. The
Van Wagoner farm had always been separated from this

road, by a fence along the west side of the road.   No acts of ownership, east of this road, except using a watering place and landing place, on the river bank opposite, in common with the other inhabitants of the vicinity, were shown.   In 1814, that part of this public road, which ran along the river, south of the Van Wagoner farm, was vacated, and a new road laid out in place of it, at the distance of a few rods from the river, running across the Van Wagoner farm.   But so much of the ancient road, along the water's edge, as was in front of the Van Wagoner farm, was not vacated, and was permitted to remain open to the public until within a few years.

The premises in dispute, was a wharf on the Passaic river, lying east of the old river road, and which was principally reclaimed from the shore and bed of the river, below high water mark.   This wharf was opposite the north part of the Van Wagoner farm, and was, except a very small part at the north-east corner, south of the north boundary line of the Van Wagoner farm, extended into the river.   This wharf had been built out into the river by Abraham Ackerman, in 1795, or thereabouts, from which time he and his tenants occupied it, extended it, and rebuilt it from time to time, carrying on an active business from it, until his death, in 1828. Shortly after his death, his executors conveyed it to the father of the defendants, who occupied it until his death; since his death it had been occupied by the defendants.   This building, occupation and reletting was done with the knowledge of the owners of the Van Wagoner farm, who lived in the mansion house on the farm, in sight of and within a few rods of the wharf.   From 1816 to 1835, John Van Wagoner, who owned the Van Wagoner farm, was an infant.

The lessors of the plaintiff showed that the owners of the Van Wagoner farm had, at different times, landed the hay from their meadows at the wharf, and at the watering place below the wharf.   That, in 1814, in a dispute between Abraham Ackerman and Roelof Van Wagoner, about the right of Van Wagoner to land a scow load of hay at the

wharf, Ackerman had offered to buy the wharf of him, and that Van Wagoner said, in reply to the offer, first pay up the back rent that you owe for the wharf, and then talk about buying it, and that Van Wagoner landed his hay at the wharf after that dispute.

The defendants claimed the premises in dispute, under Abraham Ackerman, and that his title was given by possession, being a possession of nearly sixty years. That the Van Wagoner farm did not extend further than the west side, or at most the centre of the river road. Also, that the north line of the Van Wagoner farm did not include the whole of the premises in dispute.

The court charged the jury, that if they believed the witnesses, who stated that the premises, or the greater part of it, was south of the north-west line of the plaintiff's lessors, that the plaintiff was entitled to recover. And that if they believed the testimony of the witness, that Ackerman acknowledged the right of Roelof Van Wagoner to unload his hay at the wharf, or that he owed him rent for it, it was sufficient to show that he held the dock as tenant of Roelof.

To this charge of the court the defendants excepted.

Argued by Mr. *Zabriskie* and Mr. *Whitehead* for the plaintiffs in error, and Mr. *A. S. Pennington* and Mr. *W. Pennington* for defendants.

The opinion of the court was delivered by

ELMER, J.   This was an action of ejectment, to recover possession of a dock and the ground adjacent to it, situate on the west side of the Passaic river, just below the bridge, at Acquackanonck.   The lessors of the plaintiff showed a regular title, by wills and releases, from Garret Van Wagoner, through his son Harmonus, to a farm of about two hundred acres, said, by one of the witnesses, to have been in the family at least two hundred years.   Roelof, son of

Harmonus, was shown to have been in possession of it until his death, in 1816, when it descended to his grandson John, then about seventeen months old, son of Harmonus Van Wagoner the younger, who died in 1815. The will of Garret was dated in 1769, and that of Harmonus the elder, in 1789, and proved April eighth, 1794. No title deeds were produced defining the boundaries of the farm. It was claimed, on behalf of the plaintiff, that it extended to the river, but of this, there was no positive proof. An old road ran along the margin of the river, at the place where the dock was built, and the farm was enclosed to the west side of that road, there being a lane leading to a watering place a little below the dock.

About the year 1790 or 1791, and, as it would seem, just before the death of Harmonus Van Wagoner the elder, Abraham Ackerman, from whom the defendants deduce their title, owned a store a little north of the Van Wagoner line, called the north-west line, because it ran far up into the country, a north-west course; and built the dock in question, on the shore of the river, principally south of that line, and so that if that line was extended to the river, the greater part of it was on the same side of it as the Van Wagoner farm. This dock Ackerman occupied as his own, and it was usually called by his name. About the year 1804, he rented the store and dock to one John M. Ryerson, and subsequently to one Van Houten until 1817, and after that to others, receiving the rent. About the year 1812, a public road was laid out, a little farther from the river than the old road. No possession of the dock, or of the place where it was built, was shown in any of the Van Wagoners. There was evidence that Roeloff, and his widow, as well as others, used it, in conjunction with Ackerman and his tenants, for loading and unloading wood and hay. Mrs. Jane Shelp, a witness on the part of the plaintiff, testified that when she was the wife of Harmonus Van Wagoner the younger, and, as she thought, before her son John was born, which would make it about the year 1814, more than twenty years after Ackerman built the dock, that one morning

Ackerman came to Roeloff and said, I. understand you mean to unload a flat of hay at the dock. Roeloff said, yes. Ackerman said, no you won't; if you bring the float of hay to the dock I will cut the rope. Roeloff said, I would like to see you try that; you talk as though the dock belonged to you; you have not paid up the rent for the time you have had it. Ackerman said, Mr. Van Wagoner, I want to buy the dock of you. Van Wagoner replied, as soon as you pay the rent I'll talk about it. This is the substance of the conversation, which the witness repeated with some variations, but not stronger for the plaintiff than is above quoted. She further stated that Roeloff unloaded his hay at the dock first, before Ackerman's boat; Roeloff had a scow and Ackerman a sloop; Roeloff would unload his hay first.

The case having been submitted to the jury, the court, after stating the evidence of title in the lessors of the plaintiff, by will and descent, charged the jury that, " this vested the title of the farm in them, as against any who do not show a better or older title. The N. W. line is shown to include the principal part of the premises in question, and if the witnesses are credible, the proof is such as entitles the plaintiff to recover, unless the defendants have shown a better title." Exception was taken to the charge in this particular, and error being now assigned upon it, the question before us is whether it was correct.

Upon a careful examination of the evidence, I do not find that the north-west line was shown to run down to the low water of the river, so as to include the principal part of the premises in question, nor do I think it was correct to state, as a necessary and legal result of the testimony; admitting the witnesses all to be perfectly credible, that the plaintiff was entitled to recover, unless the defendants had shown a better title. Had the plaintiffs shown a paper title covering the premises, or an undisputed possession, this might have been correct. But it was, to say the least, doubtful whether the Van Wagoners ever occupied, or even claimed the shore, where the dock was built. Perhaps the circumstances proved, including Mrs. Shelp's

statements, were sufficient to have justified the court in sub-
mitting it to the jury as a question of fact, that the property
did belong to them; and the jury, in so finding. But they
did not warrant the assuming it, as a thing to be taken for
granted, and thus shifting the burden of proof to the great
prejudice of the defendant. Ackerman had built the dock
more than sixty years before the trial, partly on the shore of
the river, and partly in the road, below the enclosures of the
farm, and so far as appeared, without consulting Van Wag-
oner, or any acknowledgment of his right there. His sub-
sequent occupation was open and notorious, and with all the
indicia of ownership. He rented it out to others, without
question, and there is no evidence of any claim to it on the
part of Van Wagoner, until the conversation testified to by
Mrs. Shelp. This was submitted to the jury in the light of
evidence, tending to prove a tenancy so as to prevent the bar
of the statute of limitations, upon the assumption that the
title was clearly in Van Wagoner, when Ackerman com-
menced his occupation, instead of being evidence necessary,
first, to be considered in connection with the other circum-
stances, upon the question, whether Van Wagoner ever
owned the property. It cannot be doubted, I think, that
this substantially varied the true question before the jury,
and may have produced a very different verdict from that
which would have been rendered, had the case been properly
submitted to them. This objection applies, however, only to
the dock and not to the adjacent ground, which was shown
to have been a part of the Van Wagoner farm, and occupied
by its owners.

Exception was also taken to another part of the charge,
in relation to the testimony of Mrs. Shelp. The jury were
told that, "if in this conversation, Ackerman assented to
the right of Rocloff to unload there, or that he owed him
for rent of the dock, it is sufficient to show that he held the
dock as tenant of Rocloff." In this, I think, there was
error. Rocloff might have had a right to unload at the
dock, to which Ackerman may have assented, and which
was perfectly consistent with the latter being the owner of

it, and which had no tendency to show that he was a tenant. This right might have arisen from an express contract between them, or from the fact that it was a dock on a navigable stream, where the public may have had a right to load and unload, upon payment to the owner of reasonable compensation. Such a broad, unqualified statement of the effect of an acknowledgment of Roeloff Van Wagoner's right to unload his hay, however inadvertently made, may have materially prejudiced the defendants' case, and not being warranted by the law applicable to the case, was erroneous.

For both of these errors in the charge, I am of opinion the judgment should be reversed, and the record remitted to the Supreme Court, with directions to award a *venire de novo.*

Judgment reversed.

*For Reversal*—THE CHANCELLOR, THE CHIEF JUSTICE, and Judges ELMER, ARROWSMITH, OGDEN, RISLEY, HUYLER, POTTS, VALENTINE and WILLS.

*For Affirmance*—Judge CORNELISON.